Welch, C. J.
It is quite clear to us that the defendants-had the right to appeal. This is not an action for the recovery of money, nor for the recovery of specific real property, within the meaning of the civil code. It is the equivalent of the old bill in chancery to stay waste. The relief by way of compelling an account for waste already committed was incidental to such a bill, and always, in a proper case, formed part of the decree. The claim to recover the land does not make the case one for a jury. As to the prayer for that form of relief inserted in the petition, I think it may be well said, as was held in the case of Corry v. Gaynor, decided at the present term,* that it is a prayer without *369 any allegation of facts to support it. I am not aware that by the law of Ohio a life estate, other than dower, is forfeited by the commission of waste thereon by the tenant for life. In the absence of statutory provision, contract, or devise, I am not aware that such is now the law in any of the States. This question, however, we need not now decide,, and do not decide. For, admitting the forfeiture, and that this was a misjoinder of two actions, uamely, an action to-stay waste and compel an account, and an action to recover real property, it ceased to be two actions at the time of entering the final judgment or decree. In the action to recover the land there was no judgment to appeal from. The caso stood at the time judgment was taken, as if that branch of it had been stricken from the petition, or discontinued.
Upon its merits the case involves the single question, upon whom did the fee in the laud descend ? Did the land descend to the wife for life only, and the fee, subject to the life estate, descend to the brothers of the intestate ? Or did the absolute fee vest in the wife ?
The intestate died in October, 1853, and the descent was, therefore, governed by the act of March 14, 1853. (Swan’s Stat. 321). The first section of the act prescribes the course of descent for ancestral real estate ■ the second section prescribes the course of descent of non-ancestral real estate, which is the character of the property in controversy here • and the third section is general, relating to both descriptions of real estate.
By the first section ancestral real estate.is made to descend as follows :
1. To the children of the intestate, or their legal representatives.
2. If there be no children or their legal representatives, then to the brothers and sisters of the blood of the ancestor from whom the estate came.
3. If there be no such brothers or sisters, then to the ancestor from whom the estate came by deed of gift.
4. If the ancestor from whom the estate came be dead, *370 then to the “ husband or wife, relict of such intestate, during Ms or her natural life.”
5. If such intestate leave no husband or wife, relict of himself or herself, or at the death of such relict, the estate shall pass to and vest in the children of the ancestor from whom the estate came, &c.
By the second section non-ancestral real estate is made to descend as follows :
1. To the children of the intestate, or their legal representatives.
2. If there be no children or their legal representatives, the estate shall pass to and vest in the husband or wife, relict of such intestate, during Ms or her natural life.
3. If such intestate leave no husband or wife, relict of himself or herself the estate shall pass to and vest in the brothers and sisters of the intestate of the whole blood, or their legal representatives.
4. If there be no such brothers and sisters of the whole blood, then to the brothers and sisters of the intestate of the half blood.
5. If there be no such brothers or sisters of the half blood, then to the father of the intestate, or, if he be dead, to the mother.
6. If the father and mother be dead, then to the next of kin to, and of the blood of the intestate.
The third section is as follows :
“When any person shall die intestate, having title or right to any real estate, and their shall be no person living entitled to inherit the same by the provisions of this act, the said real estate shall pass to and be vested as an estate of inheritance in the husband or wife, relict of such intestate, ■and if there be no such relict, it shall escheat to and be vested in the State of Ohio.”
One thing is manifest upon the face of this statute, and that is, that some mistake was made in drafting the 2d and 3d clauses of its second section. Except upon that supposition it admits of no. sensible or consistent interpretation. Either the words “ during Ms or her natural life” were by *371 mistake inserted in tbe 2d clause, or tbe words “or at the death of such relict ” were by mistake omitted from the 3d clause. Which of these was the mistake actually made, or is the one legitimately to be presumed, is the real question in this case, We are compelled either to strike from the second clause the words 11 during his or her natural life,” or else to interpolate the words “ or at the death of such relict,” or equivalent words, into the third clause. We are compelled to do so, or adopt the theory that the intention was to pass the life estate alone, and leave the fee in abeyance, which theory we deem wholly inadmissible. The sweeping language of the third section, whereby all the intestate’s right and title to real estate not otherwise inherited shall pass to the husband or wife, or to the State, forbids .any such theory of construction. Besides, to suppose that the legislature intended, in this particular instance, namely, where the estate was non-ancestral and where a wife or husband should happen to survive the intestate, that only a life estate should descend, the fee remaining without any owner, while in all other cases the whole estate should descend and vest in some one, is little less than to stultify the law making power. We are bound to hold that the intention was to pass and vest the entire estate, either by giving the whole to the husband or wife, or by vesting in the husband or wife a life estate, and, subject thereto, giving the fee to the brothers and sisters. If the former was the intention, then the words in the 2d clause, limiting the estate to life, could not have been intentionally inserted. No admissible reason can be assigned why these words of limitation should be intentionally inserted in that clause, and then nullified in the third section. If the husband or wife was to have the whole estate, why not give it all at once, and not give her the life estate in one section of the statute, and then, without anything intervening which at all qualifies the estate, or changes the rights of the parties, give the reversion in another part of the statute. To us it is quite evident, that if the intention was to pass the fee to the husband or wife, the words limiting the estate to life were inserted by inadvertence. *372 On the other hand, it seems equally clear, that if it was intended to give to the husband or wife a life estate only, and to vest the fee in the brothers and sisters, words equivalent to those contained in the 5 th clause of the first section, “or at the death of such relict,” must have been omitted by like inadvertence. We are of opinion that the latter was the mistake actually made, and that the intention was to give the husband or wife a life estate only, and to give the fee to the brothers and sisters, subject to the life estate. We are inclined to this opinion, mainly, because the mistake here supposed is more latent, and, therefore, better calculated to escape detection than the mistake involved in the other theory. No one can read this act, no matter how cursorily, with the expectation that it was designed to give the husband or wife an absolute fee in non-ancestral land, without, being struck at once — at first sight — by these words, during natural life, in the 2d clause of the second section. On the other hand, it is not only true that the act might be read with the expectation that the husband or wife was to have only a life estate, and that the brothers and sisters were to take the fee subject thereto, without detecting the omission •which we suppose, but it is true that many persons, and they lawyers and judges, have so read it. The mistake supposed by us is hidden, as it were, while the other is obvious and palpable. True, the draftsman or copyist might as readily fall into one of the mistakes supposed, as into the other. But not so with the reader or reviewer of the draft or copy. He would discover the one mistake at first sight, while he would have to read closely, and perhaps re-read, before he would detect the other. The one is latent, the other patent. They are alike easy of commission, but not alike easy of detection.
By the law as it stood before 1853, the wife took only dower in her husband’s - real estate. By the act of 1853, it seems to us to have been the intention of the legislature simply to advance her to a full life estate, and it was not until the passage of the act of 1857 that she was first given the estate in fee, to the exclusion of the brothers and sisters of the *373 intestate. Such we believe to have been the opinion ac-4uiesced in by the legal profession and the community to such an extent as entitles it to be regarded, to some extent, as a rule of property. This opinion doubtless rests in part upon dicta found in the cases referred to, (Birney v. Wilson, 11 Ohio St. 426; Brower v. Hunt, 18 id. 337); but it rests mainly, as we apprehend, in the fact that such is the prima facie purport of the statute, the impression which its first reading naturally and almost invariably inspires.
Judgment for plaintiffs, for injunction and account.
White, Day, McIlvaine and West, JJ., concurred.

Ante, p. 277.